CATHRYN MAY ET AL V. JEAN W. BROWN.

No. A-483. Decided November 14, 1945.
Rehearing overruled December 12, 1945.
(190 S. W., 2d Series, 715.)

*Strickland, Ewers & Wilkins, J. E. Wilkins* and *Magus F. Smith,* all of Mission for petitioners.

It was error for the trial court to overrule contestants motion for instructed verdict and to grant that of proponents of the will, and in entering judgment, admitting the will to probate, and it was also error for the Court of Civil Appeals to affirm such judgment. Williams v. White, 105 S. W. (2d) 1105; Richardson v. Ames, 2 S. W. (2d) 517; Tynan v. Paschal, 27 Texas 286.

*Taylor, Wagner & Taylor,* of Brownsville, *Carter & Stiernberg,* and *V. W. Taylor,* of Harlingen, for respondents.

Where a will offered for probate was executed in accordance with the requirements of the applicable statutes, and so far as known by a subscribing witness, was the last will of the testator, and no other will had been found, though search had been made, where sufficient facts to make out a prima facie case that the will offered for probate had not been revoked, and the burden of showing that such will had been revoked then shifted to contestants to prove by competent evidence that the will offered for probate had been revoked by a subsequent will. Sien v. Beitel, 289 S. W. 1057; Redmond v. Redmond, 127 S. W. (2d) 309; Womack v. Woodson, 169 S. W. (2d) 786.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

This appeal is from an affirmance by the Court of Civil Appeals of a judgment of the trial court rendered upon a peremptory instruction to the jury, admitting to probate a will made by John C. Fanning.

In this will (dated March 30, 1943) the testator made bequest of a one-half interest in his theatre properties and a cash bequest of $300.00, to his wife, Bertha Fanning; a $100.00 cash bequest to each of his daughters, Cathryn and Medwin; and a cash bequest of $100.00 to his son, Dunleith. The will carried the following statement in connection with the testator's bequest to his wife: "My wife and I have not lived together for many years, and this bequest * * * is made in lieu of and in full settlement of all the community rights of my said wife, Bertha Fanning, or any other interest, if any, that she may have in my estate."

The residue of the estate was bequeathed to Mrs. Jean W. Brown, to whom the testator referred in the will as "my dearest friend." He named her as his sole executrix without bond, and made the following statement in the will explanatory of his bequest to her:

"My reason for making this bequest to Mrs. Jean W. Brown is that there has existed between us a verbal understanding and agreement at the time of my employment of her as a housekeeper and practical nurse, that if she would keep and maintain my home for me and render practical nursing service when needed that I would adequately compensate her for such services by adequate provisions in my last will and testament; and that even with the bequest herein provided for Mrs. Brown, I feel that she has never been sufficiently compensated, and I owe her more than this bequest for the constant care, attention and watching my every step which she has so wonderfully performed for my continued existence on this earth. She has nursed me back to life and has taken care of me for many years."

The testator described his estate as consisting of "personal property and perhaps of some real property of the probable value of twenty-five thousand dollars ($25,000.00)."

An attempt by Mrs. Brown to probate this will resulted in the present contest. She filed in the county court her application to probate the will. Mrs. Fanning, Dunleith Fanning, son of testator and herself, and their two daughters (joined pro forma by their husbands) sought to prevent the granting of the application by filing their joint contest of the will.

The alleged ground of the contest, in addition to a general and a special denial, was undue influence on the part of Mrs. Brown over the testator. The special denial was that the instrument offered for probate was not the will of John C. Fanning.

About two weeks after the contest was filed Mrs. Fanning caused an order to be entered in the county court dismissing her therefrom "without prejudice to her rights." The ground stated in her motion to dismiss was that she believed the property held by her husband at the time of his death was their community property. Mrs. Fannin's dismissal left the proceedings in the county court to be tried between Mrs. Brown on the one hand, and Dunleith and his two sisters (joined by their husbands) on the other. Judgment was rendered denying the application to probate, the court finding that there was no evidence of the alleged undue influence; but further that, inasmuch as it was shown that the testator made a subsequent will, Mrs. Brown failed to discharge the burden of proof upon her to show that the will offered for probate had not been revoked.

An appeal was prosecuted by Mrs. Brown to the district court, but before the case was tried in that court another of the contestants, Dunleith Fanning, caused his contest to be dismissed, on the alleged ground that on that day he had transferred, assigned and conveyed to his two sisters all of the rights, title and interest he had in the estate of his father, either as his heir, or "under any valid will, if any be found," of his father. Dunleith in connection with his motion to dismiss him from the contest disclaimed all interest in the estate. Mrs. Brown by way of reply by trial amendment alleged that the purported assignment of interest by Dunleith was "a simulated transaction for the purpose of circumventing the dead man's statute (Art. 3716, R. C. S., 1925) * * * to ostensibly qualify himself as a witness." Mrs. Fanning continued to stand on her rights as community survivor, electing not to take under the will offered for probate, and declaring her intention not to be bound by it. The trial thereupon proceeded to judgment in the district court between Mrs. Brown as proponent of the will, and the two daughters of testator and his wife (joined by their husbands) as contestants. Upon conclusion of the testimony the jury was peremptorily instructed to return a verdict in favor of Mrs. Brown and judgment was accordingly entered admitting the will to probate and directing that letters testamentary be granted her without bond. The Court of Civil Appeals affirmed the judgment (184 S. W. (2d) 538). Writ of error was granted upon application of the contestants.

The following abbreviated excerpt from the opinion of the Court of Civil Appeals supplements the above statement of the case and discloses the view upon which the trial court's judgment was affirmed:

"Prior to 1928 and up to the time of his death on December 26, 1943, John C. Fanning was the owner and operator of the Capitol Theatre, a moving picture business in the city of Brownsville. In 1928 he began to keep company with Mrs. Jean W. Brown and in 1933 his family' * * * left him and moved to Ft. Worth. * * * After Fanning's family left Brownsville Mrs. Brown moved into Fanning's apartment and became his housekeeper and practical nurse. * * * Shortly before his death Mr. Fanning began to think more about his family and especially so after his son visited him. We executed a new will, wholly in his own handwriting, and asked two young ladies who worked for him to sign as witnesses. This will could not be found after his death. * * * Fannin told his son he had made a prejudicial will, but that he had changed that, he had made a new will in which he had made his son executor. Fanning made statements indicating he wanted his family to have the enjoyment of his property. * * * Mrs. Brown told someone that Mr. Fanning was changing everything over, and she did not see why, because his family had never done anything for him. About this time he made his wife beneficiary in his insurance policy and sent $250.00 to each of his children and $2500.00 to his wife. This was also about the time he executed the new will. Shortly before executing the new will he asked two lawyers with whom he was associated at the Elk's Club if a will written wholly in his own handwriting would be a valid will and was informed it would be. Fanning was taken sick in the Elk's Club and carried to his apartment where he died on December 26, 1943. Mrs. Brown and others were present when he died. She had those present take everything out of his pockets, including his keys, and give them to her. She sent her son down to the office, according to some of the witnesses, to see if he could find a will, and according to others, to see if he could find Mrs. Bertha Fanning's address. The son came back with a telegram and said that was all he could find. Another witness testified he saw the son (Mrs. Brown's) coming out of Mr. Fanning's office with a tin box under his arm. This tin box was later found in the apartment. There is some probability that the second will might have been in this box. * * * Proponent produced the will of March 30, 1943, in court, its execution was established, it was not mutilated or destroyed. There is no suspicion cast about *the original execution* of this will. * * * (Italics ours.)

"We take it the testimony of the subscribing witnesses was sufficient to show that Fanning executed a new will between December 3rd and 5th, * * *. The evidence offered by contestants was insufficient to overcome the presumption of continuity created by producing the unmutilated written will, and duly prov-

ing its execution without there being any evidence to cast a suspicion upon its genuineness. * * * Appellants' contention that the trial court erred in granting appellee's motion for an instructed verdict is overruled."

The foregoing excerpt is incorporated herein because it alludes to practically all of the pertinent testimony on the issues of Fanning's making a new will, and of revocation. We use it for limited purpose only of showing the subject matter of the testimony called in question, (either as to admissibility or probative quality) and not as an adoption of the deductions drawn therefrom by the Court of Civil Appeals.

We recognize that the evidence offered by Mrs. Brown was sufficient to give rise to the presumption of continuity of the will of March 30, 1943; also that it cast no suspicion upon *its original execution.* However, the evidence alluded to in the excerpt, taken in its entirety, tends to show that Fanning made a later will and to this extent cast suspicion upon the genuineness of the will as being the last will and testament of Fanning, such as it purported on its face to be. McElroy v. Phink, 97 Texas 147, 76 S. W. 753, 77 S. W. 1025. The present proceeding is one to probate a will in which a contest has been filed. The inquiry, in broad terms, is whether the will sought to be probated is the testator's will or whether it is not; and such inquiry embraces the question whether the will offered for probate has been revoked. Langehennig v. Hohmann, 139 Texas 452, 163 S. W. (2d) 402; 2 Page on Wills (3rd. ed.), p. 188. It is pointed out in McElroy v. Phink that where substantial evidence of revocation is shown the presumption of continuity is rebutted. In other words, the presumption is a rebuttable one. See in this connection 2 Page on Wills, Evidence, sec. 873, p. 720. One of the ways provided by article 8285 of the revised civil statutes for revoking a will is "by subsequent will, codicil, or declaration in writing executed with like formalities"; and the article, it will be observed, does not prescribe that the "subsequent will" must contain a revoking clause in order to accomplish a revocation.

■ We hold that the testimony raised the issues whether Fanning executed a later will or declaration in writing executed with like formalities with the will, subsequent to the date of the will of March 30, 1943; and, if so, whether the testator revoked the former will. Contestants' application for writ of error was granted upon the points alleged that the evidence raised such issues.

We adhere to the view entertained by us when we granted the writ and hold that the trial court erred in failing to submit these issues to the jury, and that the Court of Civil Appeals erred in affirming the trial court's judgment based on the instructed verdict. In re Brackenridge Estate, 245 S. W. 786, Id. 267 S. W. 244; McElroy v. Phink, supra; Wilson v. Paulus, 15 S. W. (2d) 571; Dannenbauer v. Messerer's Estate, 4 S. W. (2d) 620 (affirmed 120 Texas 14, 35 S. W. (2d) 682). In the Brackenridge case last cited the court (p. 246) says:

"The court * * * should have submitted to the jury for its determination the question as to whether or not Mr. Brackenridge intended the writing testified to by Mrs. Mitchell and Mrs. Peller to be and to constitute his last will or a declaration in writing revoking former wills. To give the instrument the legal effect either of a will or of a revocation of former wills it must be written and signed with the present intention to make it a will or a revocation. Where the evidence is not conclusive of the existence or nonexistence of such an intention, and where its existence or nonexistence is to be deduced from the facts and circumstances of the case, the issue must be determined by the jury."

■ It appears from what has been said and the authorities cited that we hold the trial court erred in not overruling the motions of both the proponent and the contestants for instructed verdicts; and this, notwithstanding the proponent introduced evidence which, standing alone, was sufficient to establish prima facie that the will in question had not been revoked. It follows also from what has been said that in order for contestants to raise the issue of revocation it was not necessary that they prove the contents of the alleged new will or declaration. Brackenridge case, supra. We agree with the Court of Civil Appeals that if probate of the alleged revoking will was being sought in this case it would be necessary to prove its contest as a prerequisite to its probate, either solely or together with the first will. But no law required petitioners to apply in this proceeding for the probate of the revoking instrument, if such was executed. Davidson v. Gray, 97 S. W. (2d) 488.

■ In view of another trial the following questions should be decided:

(a) Whether, as a prerequisite to probating the will of March 30, 1943, the burden of proof rests upon Mrs. Brown, as proponent, to prove that the will had not been revoked.

(b) Whether the testimony as to a declaration of Mr. Fanning that he had made a prejudicial will, and as to his declara-

tions indicating a desire for his family to have his property, as well as the testimony concerning statements by Mrs. Brown that she knew Mr. Fannin was changing everything over, were admissible; and

(c) Whether, in view of the dead man's statute (article 3716), the testimony of Mrs. Fanning and that of Dunleith Fanning relating to transactions, respectively, with the deceased, falls under the ban of the statute.

We answer the first question that the burden of proof inquired about rests upon Mrs. Brown as proponent. The Court of Civil Appeals correctly held that "subdivision 5 of article 3348 placed the burden of proof upon a party offering a will for probate to show by a preponderance of the evidence that such will has not been revoked by the testator." The rule was so applied by the Waco Court of Civil Appeals in Williams v. White (Civ. App.), 105 S. W. (2d) 1105 (opinion by Alexander, then associate justice), in which the Court say:

"The evidence was undisputed that it (the will offered for probate) had been executed in the manner and with the formalities required by R. S. Art. 8283 for the execution of an original will. But even if the evidence was not sufficient to conclusively establish such facts, it was at least sufficient to raise an issue for the jury. The burden of proof was on the proponent, appellant herein, to prove that the will offered by him for probate had not been revoked. 44 Tex. Jur. 636; R. S. art. 3348; Brackenridge v. Roberts, 114 Tex. 418, 436, 267 S. W. 244, 270 S. W. 1001, par. 4; 6 Tex Law Review, 556."

The following excerpt from the article last cited is approved as applicable to the present case:

"It is submitted that the correct interpretation of this article (3348) was given by Justice Gaines. When a will is established as having been duly executed by the testator, unattended by any circumstances which cast suspicion upon it, the presumption of continuity of status applies and makes a prima facie case as against a revocation. It is not incumbent upon the proponent in such a case to go further and offer additional evidence to prove the negative, namely, that it has not been revoked. However, where evidence of revocation is shown * * *, the presumption of continuity is rebutted and in the absence of other evidence the proponents must fail in their case. McElroy v. Phink, 97 Tex. 147, 77 S. W. 1025 (1903). The Brackenridge case is not in conflict with the McElroy case, for in the former the testimony clearly raises the issue as to whether the

testator did execute a subsequent will revoking the one offered for probate. This cast suspicion upon the will, rebutting the presumption of continuity, and the fact that the contestants were unable to prove the subsequent will for probate did not relieve the proponents of the burden of proving that the will offered for probate had not been revoked."

Question (a) is therefore answered in the affirmative in the language of the statute. We suggest, as we did in Gulf C. & S. F. R. Co; v. Guin, 131 Texas 548, 116 S. W. (2d) 693, 116 A. L. R. 795, that it is conducive to certainty that the answer to a negative issue will be expressed in accordance with the actual finding made, if submitted as there suggested.

Question (b) as to admissibility of the character of evidence therein referred to is also answered in the affirmative. McElroy v. Phink, in re Brackenridge Estate, Wilson v. Paulus, 15 S. W. (2d) 571, all supra; Dannenbauer v. Messerer's Estate, 4 S. W. (2d) 620 (affirmed, 120 Texas 14, 35 S. W. (2d) 682; Tynan v. Paschal, 27 Texas 286; Clover v. Clover, 224 S. W. 917, loc. cit. (3,4), p. 920; Howard v. Combs, 113 S. W. (2d) 221, Id. 131 S. W. (2d) 206; Buchanan v. Rollings (wr. ref.), 122 S. W. 962; section (e) of 4 Texas Law Review (pp. 176 to 179 inclusive) on declarations (of testators in Texas) as to past happenings and external facts, by McCormick, which we approve as correctly stating the holdings on evidence of the cases therein discussed. See also 31 C. J. S. Evidence, section 256 and Texas cases cited under the section in note 84. Some expressions used in the cases just cited above are not entirely harmonious, due, no doubt, to varying fact situations presented by the respective cases.

In McElroy v. Phink the Court points out that two reasons were urged against the admissibility of evidence of the making of such statements as are involved in the present case; first, that it is hearsay; and second, that it opens a door to fraud and forgery. The second ground was summarily dismissed as carrying but little weight because of the expressed view that the same could be said of "much other parol testimony the admission of which is never questioned."

The Court then stated with respect to the first reason ( hearsay) that while the general rule is that the declarations of third parties are not competent evidence, the question presented itself whether they should not be regarded as standing on a different basis and be treated as an exception. After pointing out that exceptions are made and declarations admitted in other cases, such as "declarations of deceased persons, * * * declarations as

to pedigree and declarations made in the usual course of business by persons who have since died," the Court (76 S. W. p. 756), chief justice Gaines speaking, says:

"The position of the testator is very different from that of an ordinary third person whose declarations may be offered in support of an issue upon the trial of a case. Both the proponent of the will and the contestant claim under him. As a very general rule he best knows the facts about which he makes the statement. His will is ambulatory and subject to be changed or revoked. No one has any right under it until his death. He has a right to make such disposition of his property as he may wish, and as a rule he has no interest to induce him to make a false statement about the matter. * * * It, (the excluded testimony) tended to show that what McElroy said to Hanna when he went for the will was, 'My wife wants it', and that the testatrix had changed her mind, and had got the will into her possession, and had destroyed it for the purpose of revoking it. We are of the opinion that the introduction of such testimony is not forbidden by sound policy, and that it violates no rule of law."

It should be stated here, as it is in some cases, that the conclusion is inescapable that if evidence is admissible as tending to show the fact of revocation of a written will by a subsequent instrument made with like formalities as the first, it is likewise admissible as tending to show the fact of the making of the revoking instrument. It is our holding that the evidence inquired about in question (b) is admissible.

We answer question (c) in the negative, that is, that the testimony inquired about does not fall under the ban of the dead man's statute, since both Mrs. Fanning and Dunleith, before testifying, divested themselves of all interest in the estate of the testator. Ragsdale v. Ragsdale (Com. App.), 142 Texas 476, 179 S. W. (2d) 291. It is unnecessary to add to what is said in the cited case in pointing to the settled law on the question. 179 S. W. (2d) pp. 294-96, loc. cits., (3) to (13). Proponent alleged collusion on the part of Dunleith Fanning but we do not find in the present facts any evidence raising that issue.

It is not necessary to discuss the testimony alleged by contestants to bear on their charge of undue influence. We find none of probative value sufficient to support the charge. We agree with the holding of the Court of Civil Appeals on this point.

The judgments of the trial court and Court of Civil Appeals granting proponent's application to probate the will of March

360

30, 1943, are reversed and set aside, and the cause is remanded.

Opinion delivered October 14, 1945.

Rehearing overruled December 12, 1945.