## HOOKER v. BODINE.

### No. 2811.

Court of Civil Appeals of Texas. Eastland.

July 28, 1950.

Rehearing Denied Sept. 8, 1950.

Nelson & McCleskey, Lubbock, for appellant.

Beall & Yonge, Sweetwater, for appellee.

GRISSOM, Chief Justice.

In April, 1940, J. C. Hooker executed a will in which he directed (1) that all of his debts be paid from cash in a bank and proceeds of his life insurance policies and that the remainder of the cash, if any, should go to his wife, Mrs. Mary Hooker. (2) He gave to his wife a life estate in 156 acres of land and three lots, with remainder to his four children. (3) He gave 480 acres of land to his four children but directed that his executor should hold said tract, collect all the revenue therefrom and apply same to the payment of the balance due on a loan against it. (4) He directed that said 480 acres should not be partitioned until the loan was paid; whereupon it should be partitioned as follows: "Mrs. Etta Cranfill is to have her prorata part of the said 480 acres of land, less $2,500.00 due my said Estate; Howard Hooker is to take his prorata part of said 480 acres of land, less $500.00 due my Estate; Hall Hooker is to take his prorata part of the said 480 acres of land, less $2500.00 due my said Estate, the three mentioned having already received cash advancements from me in the amounts named after each one; Mrs. Stella Bodine shall take her prorata share in the said 480 acres of land, she not being indebted to my said Estate."

. (7) He appointed L. L. Bodine his "sole executor" without bond. (8) He directed that his children's said debts should be deducted from their "respective inheritances under this my last will."

In September, 1940, Mr. Hooker executed a codicil which recited only that in publishing his will he failed to state that the property bequeathed and devised to his wife was his separate property. In February, 1944, Mr. Hooker executed a second codicil in which he changed the second paragraph of his original will so that upon the death of his wife the 156 acre tract should go to a daughter, Mrs. Stella Bodine, alone, instead of to all his children, as provided in the original will. Said will and two codicils were written by a lawyer, now deceased. They were typewritten and executed by Mr. Hooker with all the formalities and attested by two witnesses. Shortly after the funeral of Mr. Hooker, Mrs. Mary Hooker, the second wife of J. C. Hooker, met with his children in the Hooker home and said will and two codicils were read.

At said meeting there was also produced a letter in the handwriting of Mr. Hooker, which was in an envelope addressed to Mr. Bodine, which did not appear to have been stamped or mailed. Some of the witnesses testified to the effect that it came from among the private papers of Mr. Hooker; that said will and two codicils were in one envelope and this letter was in a different envelope. Some of the witnesses testified that said letter was produced by Mrs. Hooker and handed to one of the children and said letter was read at said meeting. It is undisputed that the letter and an envelope addressed to Bodine was presented and read by said group. Thereafter, Mr. Bodine, as the executor named in said will, took said will and two codicils and said letter to an attorney who proceeded to probate said will and two codicils of J. C. Hooker. Said letter was not probated and, apparently, not attempted to be probated as a will or codicil. Mr. Bodine testified that, although he procured the probate of the original will and two codicils only, he always considered the letter a part of Mr. Hooker's will. Said instruments were probated soon after Mr. Hooker's death in 1947. Some time thereafter, Mrs. Hooker filed a suit against Mr. Bodine in which she complained of the manner in which he was handling the estate. Thereupon, Mr. Bodine employed his present counsel who then presented said letter for probate. Probate was denied by the County Court.

On appeal to the District Court the evidence was undisputed that said letter was wholly in the handwriting of J. C. Hooker, deceased. Said letter is as follows:

"Colorado Tex

Mr. L. L. Bodine

As I expect you to be adminstraitor, I will tell you what st do.

I wnt you to take charge of land and colect all rent pay yurself the amoun note Harry ows you if the note is not payed. pay - yourself for trouble untill land is payed out, pay all rent on land until payed out, then you will find in will the amount each one have alredy recived. divid acording to land when bought - $50 pur acre. You will get more land they will to get stella's part to equal her shar, The westbrook land was bought with my own money. J. C. Hooker"

Upon conclusion of the evidence, both the proponent and contestant, Mrs. Hooker, filed motions for an instructed verdict. The court discharged the jury, over the objection of Mrs. Hooker, and, later, being of the opinion that the proponent of the will was entitled to an instructed verdict, rendered judgment admitting said letter to probate. Mrs. Hooker has appealed.

Appellant contends the court erred in not submitting to the jury questions as to (1) Mr. Hooker's testamentary intent in writing the letter and (2) whether said letter, if a will or codicil, had been revoked. We think said contentions must be sustained.

The letter was in an envelope addressed to "Mr. L. L. Bodine, Colorado Tex." The envelope had been opened. The letter was not in the envelope which contained the will and two codicils. The letter was in the handwriting of Mr. Hooker; it was informal; it referred to Mr. Bodine as the person Mr. Hooker expected to act as his "administrator." The will and two codicils were typewritten. They were formal instruments executed by Mr. Hooker and each was attested by two witnesses. In the will Mr. Bodine was referred to not as administrator, but as "sole executor." If the letter was written after the execution of the will and two codicils, Mr. Hooker was then acquainted with the formal manner in which wills and codicils could be executed and, apparently, had said formal will and codicils in his possession. The letter was not dated. No one can be certain from the evidence when the letter was written, whether before or after the execution of the will and two codicils. Although the letter refers to a will, it could have referred to a different will or to the will presented or some will Mr. Hooker planned to execute. Taken alone, it did not dispose of any particular property nor did it purport to devise or bequeath his property to any certain person. If the letter was executed as a will, prior to the execution of

the formal will of 1940, it was, of course, revoked by the 1940 will, which expressly revoked all prior wills. One may properly question why Mr. Hooker would have had his attorney prepare a formal instrument signed by witnesses, as the September, 1940 codicil was, merely for the purpose of stating that the property devised to his wife was his separate property, and then execute such an instrument as the undated letter, with such utter lack of formality, after his experience with the formal preparation and execution of a will and codicils, if he intended the letter as a will or a codicil. In connection with the fact that the letter is not dated and the further fact that there is no extrinsic testimony, tending to establish its execution date, we call attention to the following: To a large extent the provisions of the letter were the same as those of paragraph 3 of the original will. Both provide that Bodine as "sole executor" or "administrator" shall "hold" or "take charge" of land. The will makes it definite that he is to "hold" a certain described 480 acre tract, while the letter merely says "land." Both provide that he shall collect all "revenue" or "rent" therefrom and apply it in payment of a loan against the land until the loan is paid. They both provide that when the loan is paid the land shall be partitioned among his children, taking into account the children's debts to Hooker. They both show that Mrs. Bodine will get the largest number of acres. The last sentence of the letter states that the Westbrook land was bought with "my own money." In his first codicil Mr. Hooker stated that he failed to state in his will that the property devised to his wife was his separate property. That was the sole purpose and effect of the first codicil. If the property devised to his wife was the "Westbrook" land, the two statements mean the same thing. One might reasonably conclude

that the letter was simply a statement of the will which he planned to and did thereafter execute, as evidenced by the original will and first codicil. Many other reasons could be stated in support of our conclusion that different inferences may be drawn from the record by reasonable minds and different conclusions arrived at on the questions of whether or not said letter was executed with the present intention on the part of Mr. Hooker to make it his will or codicil and, if so, whether it has been revoked.

We think there were questions of fact to be determined by the jury, including whether such letter was intended by Mr. Hooker as a codicil and, if so intended and if it contained the requisites of such instruments, whether it had been revoked. Langehennig et al. v. Hohmann, 139 Tex. 452, 163 S.W.2d 402, 405; Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 246, 270 S.W. 1001. The burden was upon the proponent, Mr. Bodine, to prove it was intended by Mr. Hooker as a will or codicil and that it had not been revoked. Shropshire v. Salyer, Tex.Civ.App., 110 S.W.2d 917, 920. See also Redmond v. Redmond, Tex.Civ.App., 127 S.W.2d 309, 312 (Writ Ref.); Adams v. Maris, Tex.Com.App., 213 S.W. 622; May v. Brown, 144 Tex. 350, 190 S.W.2d 715, 165 A.L.R. 1180, 1192; 44 Tex.Jur. 544, 586. The evidence was insufficient to establish either as a matter of law.

Appellant contends the court erred in holding that when both parties presented motions for a directed verdict the issues of fact thereby became questions for the decision of the court. The record does not show that the court so held.

The judgment is reversed and the cause remanded.