**VENNER et al. v. LAYTON et al.**

No. 14407.

Court of Civil Appeals of Texas. Dallas.

Nov. 23, 1951.

Rehearing Denied Jan. 4, 1952.

Thos. R. Bond, Thomas H. Crofts and Jack P. Bond, all of Terrell, for appellants.

John A. Erhard and Dwight L. McCormack, of Dallas, for appellees.

CRAMER, Justice.

This is an appeal by contestants from a judgment probating the last will of Frances Back Venner, deceased. Appellants' contest was upon two grounds, one, want of testamentary capacity of testatrix and, second, undue influence and fraud upon testatrix.

At conclusion of the evidence the trial court instructed a verdict and entered judgment for appellees. The only question on this appeal is whether the evidence raised jury questions on the issues raised by the pleadings.

On the issue of testamentary capacity the burden of proof was upon appellees as proponents of the will, this being an original application to probate the will. The burden of proof on undue influence was upon the contestants.

The material evidence was in substance as follows: Dr. Edgar S. Ross, a Dallas physician whose specialized practice was internal medicine, testified that he knew the deceased testatrix only in a professional capacity; saw her but three times, the first time on July 26, the second August 6, and the third and last time August 24, all in 1948; that she was then 82 years of age; all his calls were in her home in Forney and on each occasion Miss Ruby Wilmarth and Mrs. Layton, nieces of the testatrix, were present. On his first call he found testatrix to have increased or high blood pressure, also called hypertension, and her general condition good. She talked to him and described her complaints as a normal individual would and impressed him as being able to take care of herself and of her affairs generally.

On his second visit she was about the same, except he felt she was a little better; he thought Mrs. Layton called him to go see testatrix, but Miss Wilmarth might have called him the first time. On each of his visits she was up, not in bed; on the third visit testatrix showed him a will, already signed by her, and asked him to witness it; he did not know where the will came from; that was the first time he had seen it. He did not see testatrix sign the will, but he did at that time, at her request, sign it as a witness in her presence,—she saw him sign it. Upon being shown the will, he identified his signature. At the time he signed the will, only he, the testatrix, Mrs. Layton, and Miss Wilmarth were present. Based upon his professional experience and his observations on visits to her home, her physical condition, etc., it was his opinion she was of sound mind and knew what she was doing on August 24, 1948. On cross-examination, he stated contestant R. H. Vogel, a nephew of testatrix, may have

called him on the phone but since it was his policy not to discuss a case without the consent of the family, he did not discuss the matter with him. He also testified he did talk to Mrs. Layton, Miss Wilmarth and their mother, a sister of testatrix, because "They engaged me," and for that reason would not discuss it with others; he expected to get paid for his time while attending the trial. He described testatrix' trouble as high blood pressure, that being the highest type of the three groups of hypertension. He advised her to rest,—to stay within her limits. In going to testatrix' home in Forney, the first time, he followed the route given him in detail by Miss Wilmarth in Dallas; when he arrived, about 9:30 A.M., Miss Wilmarth and Mrs. Layton were there; he had seen Mrs. Layton and her mother professionally off and on for sometime before his first trip to Forney; he did not know he was going to witness a will on his last visit, although one of the girls had called him before that in Dallas and asked him if he would witness a will.

On re-direct and re-cross, he testified that when he first saw testatrix she had no paralysis or mental infirmities; his only finding was high blood pressure, a degenerative process rather than a disease; that she probably had hardening of the arteries; most people with high blood pressure do have; it sometimes causes sleepiness and drowsiness; however, she did not complain to him of drowsiness. He also stated he had been paid for his visits but did not know who paid his bill; his secretary attends to such matters. The testatrix died in the winter of 1948; he thought it was in December (between three and four months after the execution of the will).

Appellees' next witness, Miss Olga A. Sharman, about 42 years old, testified in substance, material here, that she lived in Dallas; she knew testatrix during her lifetime; had seen the finish of the will, and had signed it as a witness; testatrix had it at her home; Mr. and Mrs. Layton were present at the time, she having gone to Forney with them; after she arrived, the testatrix asked her to go in the house with her and while in the house asked her to sign the will for her; and then identified her signature on the will involved.

On cross-examination she testified she was, and had been, a good friend of the Wilmarth girls for a long time; she operated a beauty shop in Dallas where the Wilmarth girls patronized her occasionally; they have been friends about fifteen years; visit in each other's homes; testatrix was about 80 years old; she had visited in testatrix' home with the Wilmarth girls on several occasions before; however on this occasion she went with Mr. and Mrs. Layton. While she was there testatrix complained of trouble with her feet, and later they were to take her to a foot doctor in Dallas. Thereafter, on another trip, testatrix came to Dallas with them to see the foot doctor. She further testified that she did not know Dr. Ross but knew of him; did not see him sign as a witness and did not know his handwriting; she knew nothing of testatrix' high blood pressure. She signed as a witness on September 27, 1948 (thirty-three days after Dr. Ross). She did not know where the will had been prior thereto. She did not know whether the will had been revoked or not.

The will was then offered and admitted in evidence.

Mr. Walter D. Adams, a druggist of Forney, testified that he had known the testatrix since 1887, when he opened his drugstore in Forney; had business, financial, religious, and social transactions with her; they were members of the same church; he visited in her home; saw her on an average of once a month for sure, and also at other times; saw her the last time at church about 30 or 60 days before her death; when they met they talked about things generally; she came to his store some 30 or 60 days before she died and paid her church subscription; seemed to be taking care of her business and herself at that time. From his association and conversations with her, he was of the opinion she was of sound mind; he did not at any time have occasion to believe otherwise; that on or about August 24, 1948 she was active and in good condition, walked along

unassisted; they talked to each other and she was perfectly able to attend to her business so far as he could tell.

On cross-examination he testified that testatrix was a member of Holy Trinity Episcopal Church in Forney; he knew that she left a substantial sum ($1,000) to that church; she was about his age and he thought she lived in Forney when he came there in 1887; she had many friends there, many neighbors lived around her; he did not know why she did not call some of her friends to witness her will; he did not know who wrote the will; knew nothing about it. In 1948 there was a doctor in Forney (Dr. Hudgins) who practiced there some 30 or 40 years; was the family doctor for nearly every family in Forney, was a good doctor with a good practice. He did not know Dr. Ross; testatrix was a member of a large family; she had several brothers and sisters; she and her three bachelor brothers had lived together (before the brothers died). She had a number of nieces and nephews in Forney, by deceased brothers and sisters; so far as he knew, testatrix' relations with them had been happy and pleasant; that was his observation; testatrix died and was buried in Forney; he did not know testatrix had high blood pressure; did not know from observation she had the symptoms; the last time he saw her she wasn't so affected, so far as he could see. She never discussed her property with him. He did not know what doctor attended her when she died, or what caused her death.

Appellants' evidence consisted of the witness, John Erhard, attorney for appellees, and a number of nieces and nephews of testatrix, all of whom were her heirs at law. Objections were sustained to their testimony relative to transactions with testatrix, and, where admitted, was thereafter stricken from the record. Mr. Erhard testified in substance that he resided and practiced law in Dallas at all times involved in this case. He was formerly Assistant United States Attorney. At that time, Mrs. Layton worked in the office of the Referee in Bankruptcy,—for some receivers in bankruptcy; he had known her for some ten or fifteen years; he was familiar with

testatrix' will; first saw it in July 1948 when Mrs. Layton brought it to him; at that time it had not been signed; he did not know who wrote it; he did not know whether testatrix had ever seen it at that time; however he did make some suggestions for changes in the draft and that such changes now appear in the will; such changes were not to paragraph Five. Paragraph Five was not changed. (Paragraph Five provided that after the payment of debts and five specific gifts, the remainder of her estate would go to her two nieces, appellees here.) Mr. Erhard further testified he was not employed until after testatrix passed away; he had never seen testatrix during her lifetime and knew none of the parties other than Mrs. Layton, Miss Wilmarth, and Raymond, their brother. At the conclusion of the evidence, and in due order, the trial court refused appellants' two requested issues as follows:

Requested Issue No. 1: "Did Miss Frances Back Venner have testamentary capacity at the time of executing the will being offered for probate, August 24, 1948? You will answer, Yes or No."

Requested Issue No. 2: "Do you find from the evidence that the making and execution of the instrument which is alleged to have been signed by Frances Back Venner and which is sought to be probated here as her last will and testament, was procured by undue influence on the part of the proponent Nellie Wilmarth Layton or Ruby Elizabeth Wilmarth, either or both of them? Answer, Yes or No."

This appeal has been duly perfected and is properly before us for review.

Appellants' first group of points in substance assert error (1) in sustaining appellees' motion, instructing a verdict, and rendering judgment probating the will; (2) in withdrawing the consideration of the facts from the jury since the proof failed to show (a) execution of the will with the formalities required by law, (b) failure to prove knowledge of or understanding by testatrix of the contents of the will, (c) failure to prove the will had not been revoked, and (d) the evidence showed sufficient facts and circumstances of undue in-

fluence and fraud to raise issues of fact; (3) the court erred in not sustaining appellants' motion to strike the will from the evidence because appellees failed to prove execution of the will with all formalities required by law and failed to prove the will had not been revoked when the proof was evident of fraud in the procurement of the will and the testatrix did not know the contents of the will; (4) error of the court in admitting the will in evidence, the evidence not showing the will was executed with all formalities required by law, and the evidence showing fraud in its procurement, and the evidence not showing that testatrix knew the contents of the will, and absent evidence it had not been revoked; (5) error of the court in not submitting to the jury requested issue No. 1, since the evidence raised the issue of fact as to testamentary capacity; (6) error in not submitting issue No. 2, since the issue raised the question of undue influence.

They will be considered together.

■■ It was not necessary for the testatrix to sign the will in the presence of the witnesses. All that was required was that the witnesses sign in the presence of the testatrix; Davis v. Davis, Tex.Civ.App., 45 S.W.2d 240; nor was it necessary for the witnesses to sign the will in the presence of each other; Ludwick v. Fowler, Tex.Civ.App., 193 S.W.2d 692; Gainer v. Johnson, Tex.Civ.App., 211 S.W.2d 789. Neither was it necessary that there be affirmative evidence that the testatrix actually read and understood the will since, if she was of sound mind and not subject to undue influence, the fact that she signed it and requested witnesses to sign it, and acknowledged it as her last will, was evidence prima facie sufficient of her knowledge of its contents. Warren v. Ellis, Tex. Civ.App., 137 S.W. 1182. Such contentions are overruled.

■■ Appellants assert error in appellees' failure to show the will had not been revoked. Under the evidence here, no jury issue was present. There was a presumption, although rebuttable, of continuity. Only where there is evidence casting suspicion on its being testatrix' last will, or tending to destroy the presumption, is a jury question as to revocation present. The presumption does not change the burden of proof; merely the burden of proceeding. May v. Brown, 144 Tex. 350, 190 S.W.2d 715, 165 A.L.R. 1180; 6 Texas Law Review 556; Art. 8285, R.C.S. Such contention is overruled.

■ The points attacking the sufficiency of the evidence to raise a jury question on the issue of testamentary capacity and the refusal of their requested issue thereon, involve a full examination of the evidence, the substance of which is hereinabove set out. Testamentary capacity must have existed at the very time the testatrix executed the will and also at the time each witness signed the will at her request in her presence. It existed only if testatrix had the mental capacity to understand the extent and value of her property, who her heirs at law were, their natural claims to her bounty, and then to take a rational survey of her estate and dispose of it according to a fixed desire and purpose of her own, unimpeded by wrongful or undue influence or fraud of others. In determining the question, the test in ordinary contract cases is not followed for the reason that on an application to probate a will the maker is dead. This being an original application to probate the will, and the testator having changed the statutory rule of descent and distribution, put upon those who offered the will for probate the burden of proving its execution under and in compliance with all the formalities set out in our statutes, one of which was that the testatrix had testamentary capacity at all material times.

■ In considering the question as to whether there was a jury question on the issue of testamentary capacity, only evidence favorable to a finding for appellants can be considered. Such evidence considered, while it need not be a preponderance of the evidence, must consist of more than a scintilla or a suspicion; it must have substance. So considering the record, we are of the opinion that there was sufficient evidence to make a jury question on the issue of testamentary capacity. In reaching this conclusion we have con-

sidered, together with all the evidence in the record, the age of the testatrix, circumstances surrounding the preparation of the will, the signing of the three signatures on three separate occasions, the parties present when the will was signed and witnessed, the state of the health of testatrix, the proximity of the execution of the will to the death of testatrix, the change in the rule of descent and distribution under our statute, the absence of any reason for such change in the record. Such holding necessitates a reversal of the trial court's judgment. However, we will discuss other questions raised which are material to another trial.

 Appellants assert error in the refusal of their requested issue on their defense of undue influence and fraud. The requested issue should have been submitted, conditioned upon an affirmative answer on the issue of testamentary capacity, since testamentary capacity is necessary before an issue of undue influence and fraud becomes material. The issue was raised by the same facts and circumstances considered by us above on the issue of testamentary capacity plus the circumstances showing opportunity and motive for such influence, if any; an absence of evidence in the record as to whether or not the testatrix read the will or had any knowledge of its terms, or who had possession of it, other than appellees, before testatrix and each witness signed it; as well as the undisputed evidence that the testatrix was fond of all her nieces and nephews, heirs at law of testatrix. Under all the evidence, the issue was for the jury. Salinas v. Garcia, Tex.Civ.App., 135 S.W. 588–589; Long v. Long, 133 Tex. 96, 125 S.W.2d 1034–1036, and cases there cited.

In reaching our conclusion, we have considered the cumulative effect of all the evidence, circumstances, etc., which tended to make up the jury issue, since each single fact or circumstance, taken separately, probably would not have caused us to reach the result above stated.

The points raising the question of the sufficiency of the evidence to make a jury question on testamentary capacity and undue influence are sustained.

A number of points are based on the trial court's sustaining of objections to testimony of nieces and nephews who were heirs at law of the testatrix. The rules with reference to such evidence are well settled and since the evidence and rulings thereon may not be the same on a new trial, are not necessary to be passed upon on this appeal.

It is also unnecessary for us to pass upon the other points, not specifically mentioned above, for the same reason.

For the errors pointed out, the judgment below is reversed and the cause remanded for another trial.

Reversed and remanded.