Lou G. MUNDEN et vir, Appellants,

v.

J. F. (Skeet) CHAMBLESS, Appellee.

No. 15438.

Court of Civil Appeals of Texas.

Dallas.

June 6, 1958.

Rehearing Denied July 18, 1958.

356

Spafford, Spafford, Freedman, Hamlin, Gay & Russell, Franklin E. Spafford and Cedric G. Hamlin, Dallas, for appellants.

Harold W. McCracken, Dallas, for appellee.

DIXON, Chief Justice.

This is a contest of the alleged holographic will of Lillian M. Chambless, who died at Dallas, Texas, May 7, 1956. The proponent of the will, appellant here, is Mrs. Lou G. Munden, a sister of the deceased. The contestant, appellee here, is J. F. (Skeet) Chambless, a brother. Also surviving the deceased, who was a single woman, at the time of her death, are her father, Joe Chambless, another brother, W. A. Chambless, and a half brother, Billy Joe Chambless.

It was at first believed that Lillian M. Chambless had died intestate. On June 1, 1956, an application was filed for letters of administration, which application recites that the deceased departed this life intestate. Among the exhibits shown in the record is an affidavit by Lou G. Munden, now proponent of the alleged will, in which affidavit Lou G. Munden also recites that her sister died intestate. However, on June 28, 1956, Lou G. Munden filed her application for probate of the instrument in controversy as the last will and testament of the deceased.

In her application for probate applicant makes this allegation: "That the deceased left a written will which is filed herewith and which consists of a letter, a postscript to said letter, and the envelope in which same was received, said will being dated February 25, 1956, being wholly in the handwriting of the deceased."

The letter above referred to is a seven page document hand written in ink, except the so-called "postscript", which is hand written with pencil, and is to be found, not at the end of the letter, but at the top of the first page. We quote the "postscript" in its entirety: "Sat. P.S. I've been thinking about Skeet and Joe Chambless they Rec. not a thing from *me*. Lou I will my Real estate plus cash, in full to you! I also will ear screws for mom. Sho nuf' tiz Lil."

Appellant, Lou G. Munden, claims that the letter came to her through the United States mail in an envelope addressed to her at her home in Arlington, Virginia. The ink written seven page letter, the penciled "postscript" and the envelope in which it is alleged the letter was transmitted through the mail, are considered by appellant to be one testamentary instrument designated in the record as appellant's Exhibit No. 2.

Appellee, J. F. (Skeet) Chambless in his answer alleged that the instrument sought to be probated as the last will of Lillian M. Chambless is insufficient to constitute a will and cannot be probated because (a) the "postscript" appearing at the top of the page of the alleged letter and written in pencil is not wholly in the handwriting of Lillian M. Chambless; (b) the balance of the seven page letter written in ink, exclusive of the "postscript", together with the envelope attached, is not wholly in the handwriting of Lillian M. Chambless, and (c) in the alternative, if Lillian M. Chambless did write that portion of the letter written in ink, then said portion without the penciled "postscript" does not constitute a will, and makes no testamentary disposition of the estate of the deceased.

The Probate Court of Dallas County refused probate of the alleged will. On appeal to the District Court two special issues were submitted to the jury, in substance as follows: (1) Is the instrument marked "Proponents Exhibit No. 2" (the letter, including "postscript" and envelope) wholly written by Lillian M. Chambless, the deceased; and (2) is the penciled portion of said Exhibit No. 2, wholly written by Lillian M. Chambless? To both of these issues the jury answered "No".

In her points on appeal, Nos. 1 through 5, appellant, Lou G. Munden alleges that the trial court erred in submitting special issue No. 2, because (1) said issue is a duplicate of special issue No. 1; (2) there is no pleading on which it can be based, appellant's pleading being based on the entire instrument (her Exhibit No. 2, which

was pled, offered and referred to as a single instrument); (3) special issue No. 2 constituted a comment on the weight of the evidence; (4) said issue placed a double burden on appellant; and (5) said issue was calculated to confuse, mislead and confound the jury so that appellant was denied the opportunity of having clearly presented and answered the one special issue made by her pleadings: Whether Exhibit No. 2, taken as a whole, was in the handwriting of testatrix.

We see no merit in the foregoing contentions. The material part of Exhibit No. 2, the testamentary part, is the so-called "postscript" written in pencil, and hereinbefore quoted. Appellee as contestant centered his attack both in his pleading and his evidence on this part of the Exhibit, hence was entitled to have issue No. 2, submitted. Special Issue No. 2, does not seem to us to be a duplication of special Issue No. 1. The jury might well have answered that Exhibit No. 2 (letter, "postscript" and envelope) taken as one instrument, was not wholly written by the testatrix, yet might have answered without conflict in its findings, that the "postscript" was wholly written by the testatrix.

■■ But the question, as presented by the circumstances shown in the record before us, has been resolved by our Supreme Court against the contentions of proponent. Since Rule 434, Texas Rules of Civil Procedure, became effective in 1941, duplication of special issues is not sufficient of itself as ground for reversal of a judgment. The complaining party must go further and show that the duplication influenced the jury to render a verdict different from that which it would have rendered but for the duplication. Dallas Ry. & Term. Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 384. In this case if we were to hold that the two issues are duplicates in substance (we do not so hold) we nevertheless would feel it necessary to hold that under the circumstances the duplication did not affect the jury verdict. Appellant's points Nos. 1 through 5, are overruled.

■ In her points Nos. 6 and 7, appellant complains because the court refused to permit her to testify that she had received, through the United States mail, the letter and envelope in question. These documents were already in evidence before the jury. We think the proffered testimony of appellant was properly excluded because it involved a transaction with the deceased during her lifetime within the meaning of Art. 3716, Vernon's Annotated Civil Statutes, the "Dead Man's Statute." It has been held that the word transaction as used in the statute includes every method whereby one person can derive impressions or information from the conduct, condition or language of another, including written as well as oral communications. It has been said that the test is whether, in case the witness testified falsely, the deceased, if living could contradict the testimony of his own knowledge. Holland v. Nimitz, 111 Tex. 419, 239 S.W. 185; Andreades v. McMillan, Tex.Civ.App., 256 S.W.2d 477; 14-A Tex.Jur. 821, 823. There is some conflict in the decisions but we believe the weight of authority holds that the rule is applicable to letters alleged to have been received from deceased. Crumley v. Gile, Tex.Civ.App., 271 S.W. 641; Hardin v. Hardin, Tex.Civ.App., 1 S.W.2d 708 (Syl. 6); Kindel v. Kindel, Tex.Civ.App., 57 S.W.2d 223 (Syl. 1); Carpenter v. Ware, 4 Colo.App. 458, 36 P. 298; 97 C.J.S. Woods and Forests § 12, p. 703.

Anyway we do not believe that appellant has been shown to have suffered harm by the exclusion of the testimony. In connection with the testimony of a disinterested witness, the letter and envelope addressed to proponent, bearing the return address of deceased, had already been introduced in evidence. The envelope shows a postmark of 7:30 A.M. February 25, 1956 at Dallas, Texas. Both documents were before the jury as parts of appellant's Exhibit No. 2. Under the circumstances we cannot say that the admission of the excluded testimony would have resulted in a different judgment. Rule 434, T.R.C.P. Appellant's points Nos. 6 and 7 are overruled.

■ Proponent next asserts that it was an abuse of discretion for the court to fail to instruct the jury that proponent, Lou G. Munden, was not permitted by law to give evidence relating to any transaction with, or statement by Lillian M. Chambless, deceased. Rule 182a, T.R.C.P., a new rule which went into effect September 1, 1957, provides that such an instruction shall be given. The trial of this case began September 23, 1957, twenty-two days after the new rule went into effect.

We must overrule appellant's contention. Appellant did not request the trial court to give the instruction, and did not object to the court's charge for failure to include the instruction. The first time the matter was mentioned was in proponent's amended motion for new trial, filed November 5, 1957. This was too late. The trial judge was not given an opportunity to remedy his alleged error in failing to give the instruction. By failing to object before submission of the charge, proponent in effect waived the failure to give the instruction. Rules 172, 174 and 279, T.R.C.P. Proponent's point No. 8 is overruled.

■ In her point No. 9, appellant says that the trial court abused its discretion in denying her motion for leave to take the oral depositions of the witness, Charles C. Scott, at Kansas City, Missouri. In the record before us we find no order overruling appellant's motion, nor a bill of exceptions showing the court overruled the motion. Under the circumstances we are not required to pass on the point.

■ However we are convinced that the court did not abuse its discretion if it did overrule the motion. The record shows that appellant took the depositions of Charles C. Scott in answer to written interrogatories. The taking of depositions is governed by Rules 186, 199 and 201, T.R.C.P. These rules vest a broad discretion in the trial court as to whether depositions shall be oral or upon written interrogatories, especially when such depositions are to be taken at a point more than a hundred miles distant from the Court. See comment by Robert W. Stayton in 20 Tex.Law Rev. 18. Appellant's point No. 9 is overruled.

In her points Nos. 10 and 11, appellant says that the court erred in sustaining appellee's objections to questions Nos. 4 to 25, inclusive, and No. 27, and by refusing to permit appellant to read said questions in the deposition of the witness Charles C. Scott.

Charles C. Scott is a handwriting expert residing in Kansas City. Appellee's attorney, in the course of his preparation for the trial of this case, employed Scott to examine the questioned documents, and to submit a preliminary report as to their genuineness. Arrangements were made for a Deputy District Clerk of Dallas County, Texas, to take the letter and envelope in controversy to Kansas City, for examination by Charles C. Scott. Scott studied the documents and others submitted to him, compared them, and in due time made his written report to appellee as to whether the writing on the letter, the "postscript" and envelope was the handwriting of Lillian M. Chambless. Appellee did not take the depositions of Scott, nor was he offered as a witness at either the trial in the Probate Court, or the trial in the District Court.

■ Meantime appellant had learned that appellee had arranged for Scott to examine the documents and make a report about them. After appellee failed to produce testimony from Scott, appellant applied for and obtained a commission to take Scott's depositions in response to written interrogatories.

When the depositions were offered in evidence appellee objected to the questions and answers above referred to on the grounds that they violated Rule 186a, T.R.C.P., a new rule which had been in effect only since September 1, 1957. The Court sustained the objections and appellant was not permitted to read to the jury

either the answers or the questions. Apparently appellee's point on appeal complains only of the court's ruling forbidding appellant to read the questions.

Rule 186a, T.R.C.P., requires our careful consideration. It provides for the taking of depositions for purposes of discovery, or for use as evidence in a trial, or for both purposes. But the Rule lays down certain restrictions and limitations regarding its use. It is these restrictions and limitations which appellee invoked when he made the objections to the use of the depositions of Charles C. Scott.

Rule 186a, after providing that depositions may be taken, limits their use by providing that certain types of information *shall not* be required to be produced by depositions. The prohibition includes the following types of information: (1) privileged matter; (2) written statements of witnesses made subsequent to the occurrence, or transaction upon which the suit is based, and made in connection with the prosecution, investigation, or defense of such claim; (3) communications passing between agents or representatives or employees of either party to the suit, or communications between any party and his agent, representatives, or their employees, made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation, or defense of such claim; and (4) disclosure of information obtained in the course of an investigation of a claim or defense by a person employed to make such investigation.

It is important to observe that appellant did not make separate, independent arrangements of her own to have Charles C. Scott examine the disputed documents, then to make a report to her as to the genuineness of the handwriting alleged to be that of Lillian M. Chambless. Had she done so the issue before us would have been quite different. We do not in this opinion pass on any question involving her rights to offer the depositions of Charles

C. Scott had she retained him as her agent to examine the disputed documents, and had his depositions set out the result of an investigation or report made at her request and in her behalf.

The depositions offered by appellant merely sought to obtain from Charles C. Scott confidential information obtained by Scott in the course of his investigation in behalf of appellee, who had engaged the services of Scott, and to whom Scott had made his report setting out his findings and his opinion. As we see it the depositions sought to elicit information which comes within the prohibition of Rule 186a. The trial court properly refused to let the answers of the witness be read to the jury. And since it was proper to exclude the answers of the witness it was proper to exclude the questions too. Appellant's point on appeal Nos. 10 and 11 are overruled.

The last appellant's point is that it was error for the court to refuse a new trial requested by appellant on the ground of newly discovered evidence. At the hearing on her amended motion for new trial appellant produced an affidavit by Mrs. Grace Anway, now a resident of Stockton, California, but who formerly operated a beauty salon in Dallas, Texas. Mrs. Anway in her affidavit stated that in February, 1956 Lillian M. Chambless told her that she had written her sister Lou a long letter telling about her affairs and how she wanted them handled. She had told Mrs. Anway how many pages were in the letter and that she had mentioned Mrs. Anway in the letter. In her affidavit Mrs. Anway says that she recognizes the letter in dispute in this case as the letter referred to in the conversation, and she is willing to testify as to the genuineness of the writing in both the letter and the "postscript".

Appellee filed a sworn answer to appellant's amended motion for new trial. In this answer appellee especially attacks the sufficiency of appellant's plea of newly

discovered evidence as grounds for a new trial. Among other reasons given, he says that appellant was lacking in diligence in trying to obtain the testimony of Mrs. Anway, did not ask for a continuance in order to obtain her testimony, her testimony would merely have been cumulative and would not have changed the jury verdict, and Mrs. Anway made statements in her affidavit which are in conflict with statements contained in a letter written by Mrs. Anway to appellee. In support of his answer appellee attached a number of exhibits including affidavits and the letter from Mrs. Anway to appellee.

 It has long been the law that the granting or refusal of a new trial for newly discovered evidence rests within the sound discretion of the trial court. Moreover the burden is on the party asking for a new trial to show that he exercised due diligence to produce the evidence for the former trial. The evidence must not be merely cumulative, corroborative, impeaching or contradictory. And the movant must show that there is a reasonable probability that upon a retrial the new evidence will effect a change in the result. 31 Tex.Jur. 91–92; 95–97; 107; 110–113.

The record of the testimony in this case is 546 pages in length. Appellant introduced the testimony of ten witnesses, seven of whom, including a handwriting expert, testified that appellant's Exhibit No. 2 was wholly in the handwriting of Lillian M. Chambless. Appellee also introduced witnesses, including a handwriting expert, whose testimony was to the contrary. In the light of the record we cannot say that there is a reasonable probability that upon a retrial the newly discovered evidence will effect a change in the result. In our opinion the trial court did not abuse its discretion in refusing to grant a new trial.

In his last counterpoint appellee says that regardless of our holding on appellant's points on appeal, the judgment of the trial court must be affirmed, because, appellant produced no evidence to show (1) that Lillian M. Chambless was of sound mind at the time she allegedly executed the will in question; and (2) that the alleged will had not been revoked by the testatrix. Appellee points out that these are facts which must be established, both in the probate Court, and in the District Court, before an alleged will can be admitted to probate. Whatley v. McKanna, Tex.Civ. App., 207 S.W.2d 645; Hooker v. Bodine, Tex.Civ.App., 232 S.W.2d 371; A & M College of Texas v. Guinn, Tex.Civ.App., 280 S.W.2d 373; Chesney v. Chesney, Tex. Civ.App., 270 S.W.2d 464. However, we see no need to pass on appellee's counterpoint, since we have overruled all the appellant's points on appeal.

The judgment of the trial court is affirmed.