Kate Howard USHER, Appellant,

v.

Mrs. Ruth Lawton GWYNN et al., Appellees.

No. 14165.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 22, 1964.

Rehearing Denied Feb. 19, 1964.

Hicks, Dollahon & Wohlt, F. Warren Hicks, Frank G. White, Houston, for appellant.

Lola L. Bonner, Rockport, for appellees.

BARROW, Justice.

This is a will contest in which Mrs. Ruth Lawton Gwynn and Mrs. Fred J. Ashley,

as proponents, offered a holographic instrument, dated August 7, 1961, for probate as the last will and testament of Howard S. Cunningham. Kate Howard Usher, niece of testator, contested the instrument on the grounds of want of testamentary capacity and undue influence allegedly exercised on testator by proponents.

The case was tried before a jury and all issues, except that of revocation, were answered favorably to proponents.[1] The trial court sustained proponents' motion to disregard the jury finding on the issue of revocation and entered judgment admitting said will to probate. Contestant has perfected her appeal from this judgment and asserts that there was evidence to support the negative jury finding that the will had been revoked and that, as a matter of law, the deceased was acting under the undue influence of proponents at the time of the execution of the will.

Howard S. Cunningham died in Rockport, Texas, on November 7, 1961, at the age of 78 years, and left an estate of the value of approximately $16,000. At the time of his death, his sister, Kate Cunningham Usher, was his sole heir at law. Mrs. Usher initially filed this contest but died intestate prior to the time of the trial, leaving as her sole heirs Dr. Francis Cowgill Usher and contestant, Kate Howard Usher. Dr. Usher conveyed all his interest in testator's estate to his sister, Kate Howard Usher, and she thereby asserted claim as the sole heir at law of Howard S. Cunningham.

 The Texas Probate Code, among other requirements, places the burden upon the proponent of a will to prove to the satisfaction of the court, that the will was not revoked by testator. Sec. 88(b) (3), Texas Probate Code, Vernon's Ann.Tex. Stats. This statutory requirement must be proved whether there is a contest and

whether the pleadings raise the issue or not. May v. Brown, 144 Tex. 350, 190 S.W.2d 715, 165 A.L.R. 1180; McElroy v. Phink, 97 Tex. 147, 76 S.W. 753.

This requirement was submitted to the jury in the form of a double negative issue, which, although properly placing the burden upon proponent, tends to confuse the jury. For this reason, this form of issue has been often criticized. Corbell v. Koog, Tex.Civ. App., 188 S.W.2d 905, writ refused. Here the issue was submitted without objection and all parties apparently agree that proponents, by the finding of the jury, failed to carry their burden to show that the will offered for probate had not been revoked. Proponents urge, however, and the trial court found, that there is no evidence to support the finding by the jury.

 The principal question before us is whether the trial court erred in disregarding this finding by the jury. In determining this "no-evidence question," we must view the evidence most favorable to the answer and disregard that militating against it. If the jury's answer may reasonably be inferred, when viewed in this light, there is legally sufficient evidence to support the answer and the trial court should not have disregarded it. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696; No Evidence and Insufficient Evidence Points of Error, Robert W. Calvert, 38 Tex.Law Rev. 361.

 The Texas cases hold that proponent's burden of proving that the will has not been revoked is discharged and the will is entitled to be probated when its due execution is proved, in the absence of circumstances which cast suspicion on it, or in the absence of evidence of its revocation. This is done by a presumption of continuity of status and a prima facie case against a

1. "SPECIAL ISSUE NO. 3. Do you find from a preponderance of the evidence that exhibit P-1 had not been revoked by

Howard S. Cunningham at the time of his death?
"Answer: 'yes' or 'no'
"We, the Jury, answer: 'No'."

revocation. If the contestant puts in sufficient evidence to rebut the presumption of non-revocation, then the burden of going forward with the evidence shifts back to the proponent of the will, and he must discharge, by a preponderance of the evidence, his burden of proof that the will was not revoked. McElroy v. Phink, supra; Covington v. McDonald, Tex.Civ.App., 307 S. W.2d 335; Venner v. Layton, Tex.Civ.App., 244 S.W.2d 852; 8 Tex.Law Rev. 408. The courts recognized a distinction between evidence to raise the issue of the act of revocation and sufficient evidence to show execution of a subsequent revoking will. Brackenridge v. Roberts, 114 Tex. 418, 270 S.W. 1001; May v. Brown, supra; Corbell v. Koog, supra.

■ Contestant asserts that the issue of revocation was raised in this case by the testimony of Dr. Usher and his wife, that subsequent to the death of Howard S. Cunningham they were shown an instrument, by proponents' attorney, different from the instrument offered in probate, and were advised by this attorney that this second instrument, which was also dated August 7, 1961, was the last will of decedent. This purported second instrument, which was said to be in the custody of proponents' attorney, was never produced in evidence. Contrary to the facts in Covington v. McDonald, supra, both Dr. Usher and his wife testified unequivocally that they read this purported second will, and it was different from the will offered by proponents. They both testified that it was shorter than the probated instrument and that it was witnessed by proponents. Mrs. Usher testified that the bequest to Mrs. Gwynn was for fifteen shares of stock in the will shown her by proponents' attorney, whereas the probated will made her the residuary beneficiary. The existence of the purported second will was denied by both Mrs. Gwynn and Mrs. Ashley. They further denied that the will offered for probate was ever revoked. The attorney for proponents did not testify.

Although there is sufficient evidence to support the jury's finding that the proponents did not exercise undue influence over testator, the will is an unnatural one from the standpoint that it does not make any bequest or reference to his sole heirs. This is particularly unusual as regards contestant, as she had lived in the home of testator and his first wife for seventeen years, and there was no evidence of any hostility or other reason for her omission from the will. It was further shown that testator had indicated on several occasions prior to August 7, 1961, that his property would go to Dr. Usher and contestant on his death. Contestant and Dr. Usher lived in Houston, and all of testator's papers and personal effects were in proponents' custody after his death.

Mrs. Gwynn, who was bequeathed approximately $11,000 of testator's estate, met testator after he moved to Rockport early in 1960 and married Mrs. Hannah Stone. Mrs. Hannah Cunningham died in May, 1960. Mrs. Gwynn operated a shop across the street from the apartment where testator lived after the death of Mrs. Cunningham, and was a very helpful and considerate friend of testator until his death. Mrs. Ashley and her husband were neighbors of Mrs. Stone and became acquainted with testator when he moved to Rockport in 1960. They were not related to testator, but were kind friends.

It is our opinion that the testimony of Dr. Usher and his wife, that they were shown another instrument which was in the control of proponents and represented by proponents' attorney as being testator's will, is some evidence, and rebutted proponents' prima facie case against a revocation, under all the circumstances of this case. May v. Brown, supra. The trial court erred in disregarding the jury's answer on the revocation issue.

The judgment of the trial court is reversed and rendered to deny probate of the will offered by proponents.