332 F.Supp. 1225 (1971)
Lee Holden PARKER, Petitioner,
v.
Harold SWENSON, Warden, Missouri State Penitentiary, Respondent.
No. 71 C 246(3).
United States District Court, E. D. Missouri, E. D.
August 30, 1971.
*1226 Lee Holden Parker, pro se.
John C. Danforth, Atty. Gen. of Mo., Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
Petitioner, presently in State custody, petitions this court for writ of habeas corpus pursuant to 28 U.S.C. § 2254.
Petitioner was convicted in the Circuit Court for the City of St. Louis of robbery in the first degree by means of a deadly and dangerous weapon. This conviction was reversed by Division No. 2 of the Missouri Supreme Court on September 14, 1970 (459 S.W.2d 241) and the case remanded for hearings on the applicability of the Second Offender Act. Petitioner's Motion for Rehearing was denied on October 12, 1970 and he was returned to the court of original jurisdiction and resentenced on November 12, 1970.
Petitioner asserts a number of grounds in support of his application. His principal contentions are that he was denied due process of law (1) by the introduction of certain photographs at trial, (2) by in-court identifications which he contends were "tainted" by constitutionally impermissible methods of pretrial identification and (3) by introduction of evidence which he contends was illegally seized. Petitioner was granted leave to proceed in forma pauperis. Respondent has filed a Response to this court's order to show cause why the petition for writ of habeas corpus should not be granted, and petitioner has filed his Traverse to that Response.
At approximately 9:45 P.M. on the evening of July 11, 1967, Rita Brockelman and George McQuade were seated in a convertible automobile parked in a well-lighted parking lot of a bank along 13th Street in St. Louis, Missouri. As they sat, a man approached their automobile and suddenly held a knife to Miss Brockelman's throat stating that he was going to take the car. The assailant handed a roll of tape to Miss Brockelman, instructed her to tape McQuade's wrists and taped hers when she had finished. The man thereupon asked instructions for raising the top of the car, and after raising it, drove West on Interstate 70, *1227 with his two victims sitting beside him in the front seat. At trial, McQuade testified that the assailant stated that he had a gun. Both victims testified that they saw what appeared to be "a small gun holster" protruding from the side of the assailant's waistband, but neither actually saw a gun. Miss Brockelman testified that the robber made no effort to cover his face or otherwise hide his identity. He was, however, wearing gloves. There was testimony to the effect that the robber stated that he was an escaped convict who had been in prison 17 years, that he had been recognized and that he had to get out of town.
After reaching a point West of St. Charles, Missouri on Interstate 70, the man drove onto a field, had McQuade get out of the car, taped McQuade's feet to his hands and left him on the ground. Then he took twenty-five dollars from Miss Brockelman's purse, told her to get out of the car, and bound her feet together with tape and some string. The assailant then took ten dollars from McQuade's wallet and drove away, leaving the two victims in the field. A short time later, McQuade freed himself, walked to a farmhouse with Miss Brockelman and called the authorities. They gave a description of their assailant to the St. Charles Police.
Detectives Edward Allers and John Lepping of the St. Louis Metropolitan Police Department were assigned to the case. The following day they accompanied the victims to the field and recovered some of the tape. During the next few days, on several different occasions, the detectives exhibited from fifty to two hundred photographs to the victims, roughly six or seven photographs at a time. At one time McQuade picked one photograph that he said resembled the assailant. This was not a picture of Parker. Miss Brockelman never indicated that any of the photographs exhibited to her during this time resembled the assailant.
On July 13, 1967, the automobile was found parked at the rear of 714 Cole Street in St. Louis approximately 1½ blocks from where petitioner resided at Dismas House, a halfway house for parolees, located at 903 Cole Street. No fingerprints were found on the car but Miss Brockelman's purse was found inside.
A police officer testified that the authorities subsequently received information from a confidential informant that petitioner was responsible for the offense. In the early afternoon of July 18, 1967, Detectives Allers and Lepping took a single picture of Parker to Miss Brockelman's place of employment. At trial she testified that she positively identified Parker as the assailant when shown this photograph. Afterwards, the police took a photograph of petitioner to McQuade's place of employment, and at trial, he testified as to being "almost positive" that he could recognize Parker as the assailant. The detectives testified that these witnesses' reaction to the photograph led them to believe they had only a tentative identification of petitioner at this time.
At trial, Miss Brockelman identified State's Exhibit No. 12 as the photograph shown to her on July 18. This was a "mugshot" taken of petitioner at the Illinois State Penitentiary during a prior incarceration there and dated "12-6-66". McQuade identified State's Exhibit No. 13 as the photograph shown to him on July 18. The two detectives never testified as to which picture they remembered showing to the witnesses.
After the victims had identified Parker as their assailant, the two officers, without either a search warrant or an arrest warrant, went to petitioner's place of employment, placed petitioner under arrest and searched him. A knife was found in his pocket, but was never introduced in evidence. The officers testified that before being taken to the police station, petitioner requested that he be allowed to remove his belongings from his locker. The detectives accompanied him and examined the contents of a small bag he removed from the locker. The bag contained a small leather pipe holder, which the two officers took into their *1228 possession. After taking petitioner to the police station, the detectives went to Dismas House, obtained a key from the manager, opened Parker's locker there, searched and removed the contents, which were suppressed at a pretrial hearing on motion of defense counsel.
A photograph was taken of petitioner by the police on the date of his arrest, July 18, as routine police procedure. This photograph was introduced at petitioner's trial as State's Exhibit No. 11 and Defendant's Exhibit C.
Three days after petitioner's arrest, the two detectives took Brockelman and McQuade to witness petitioner's arraignment. There is evidence that the officers showed the July 18 photograph, State's Exhibit No. 11 and Defendant's Exhibit C, to the victims prior to the arraignment. During the arraignment, the officers and the witnesses sat together and watched as successive groups of four or five men were brought into the courtroom. Petitioner was in one of the groups called and he was charged with the crime in the presence and within the hearing of the victims. At this time both positively identified him as the assailant. There is no question but that at this time petitioner was without aid of counsel. As they were leaving the courtroom there is evidence that the detectives once again showed petitioner's July 18 photograph to the victims.
At trial, petitioner objected to the introduction of the pipe holder, identified as looking similar to the holster the man carried on the night of the assault, and the in-court identifications made by both Brockelman and McQuade, each of whom testified that they could recognize petitioner  as he sat at defense table  as the man who assaulted them on the night of July 11. Petitioner maintained that the recollection of these witnesses had been "tainted" by the improper use of petitioner's arraignment as a lineup. Petitioner also contended that the use by police of a single photograph at the time the victims identified him on July 18 was too suggestive.
In addition, petitioner also objected to the court permitting each juror to view the Illinois State Penitentiary "mugshot", State's Exhibit No. 12. Before admitting it, the court ordered the words "Illinois State Penitentiary" covered with adhesive tape so that only the numbers "12-6-66" were visible. Petitioner nonetheless maintained that the jury was able to recognize the photograph as a "mugshot", and thus evidence of his prior criminal record was introduced even though he did not take the stand. The trial court permitted introduction because it believed the photograph to be relevant evidence since witness Brockelman had referred to it as the photograph shown to her on July 18. The court ruled this photograph could not prejudice petitioner since the words "Illinois State Penitentiary" were kept from the jury's view.
Petitioner asserts a number of other contentions which will be discussed, infra.

Exhaustion of State Remedies
In his Response to this court's show cause order, respondent contends that Parker may not properly petition this court for writ of habeas corpus as he has not yet exhausted all available state remedies. 28 U.S.C. § 2254(b). As indicated, supra, the Supreme Court of Missouri reversed and remanded Parker's original appeal. He was subsequently returned to the court of original jurisdiction and reconvicted. Respondent's point is that under Missouri law, petitioner may still seek post-conviction review of this second conviction under V.A.M.R. Crim. Rule 27.26.
While it is true that Parker's original conviction was reversed and remanded solely for hearings on the applicability of the Second Offender Act, the identification issues which he raises here were considered and rejected by the Missouri Supreme Court. Everything petitioner presents in his petition here was before that court on appeal. The Missouri Supreme Court has held that where the merits of a case have been conclusively determined on direct appeal, they will not again be considered under Rule 27.26. *1229 State v. McMillian, 383 S.W.2d 721 (Mo. 1964); State v. Statler, 383 S.W.2d 534 (Mo.1964); State v. Durham, Mo., 386 S.W.2d 360, cert. denied 382 U.S. 857, 86 S.Ct. 110, 15 L.Ed.2d 94 (1965); State v. Brown, 461 S.W.2d 743 (Mo.1971); Keeny v. State, 461 S.W.2d 731 (Mo. 1971). This court therefore finds that Parker has exhausted all available state remedies on all points he raises in his petition.

Admission of State's Exhibit No. 12
Petitioner contends that the admission of State's Exhibit No. 12 (the Illinois State Penitentiary "mugshot") improperly brought before the Jury evidence of prior criminal conduct by a defendant who had not taken the stand.
This court will not review the wisdom of evidence rulings on petition of writ of habeas corpus. It will limit the scope of its inquiry to an examination of whether federally guaranteed rights have been violated. Atwell v. Arkansas, 426 F.2d 912, 915 (8th Cir. 1970); Durham v. Haynes, 368 F.2d 989 (8th Cir. 1966), cert. denied, 390 U.S. 959, 88 S.Ct. 1054, 19 L.Ed.2d 1154 (1968); Wilson v. Nebraska, 316 F.2d 84 (8th Cir. 1963). Only where admission of evidence is so prejudicial as to constitute a denial of due process will federal courts intervene in state proceedings on petition for writ of habeas corpus. Faust v. State of North Carolina, 307 F.2d 869 (4th Cir. 1962), cert. denied, 371 U.S. 964, 83 S.Ct. 547, 9 L.Ed.2d 511 (1963); Cousins v. Cox, 311 F.Supp. 1313 (W.D.Va.1970); Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960); Holliday v. Adams, 325 F.Supp. 444 (D.Conn.1970), aff'd, 443 F.2d 7, 2d Cir. Introduction at trial of evidence of prior crimes is a matter of state evidentiary law and thus will ordinarily not be subject to review in federal habeas corpus proceedings. Gephart v. Beto, 441 F.2d 319 (5th Cir. 1971); Kirkpatrick v. Cox, 321 F.Supp. 284 (W.D.Va.1971); Procella v. Beto, 319 F.Supp. 662 (S.D.Tex.1970); Donald v. Decker, 318 F.Supp. 563 (N.D.Tex.1970).
Whether admission of police "mugshots" constitutes a denial of due process was considered by the Third Circuit Court of Appeals in United States ex rel. Mertz v. State of New Jersey, 423 F.2d 537 (3d Cir. 1970). In that case, conviction had been obtained in state court after two police photographs had been admitted into evidence. The front views of both photographs plainly showed a large label on the petitioner's person containing a number and a date. In addition, the front of one of the pictures bore the words "Police Dept. Union City, N. J.". Also, notations had been made on the reverse sides of the photographs. The trial judge received the pictures in evidence after directing that the notations they bore on their reverse sides should be masked. In his charge, he instructed the jury to disregard the fact that they were police photographs and to consider them solely in relation to the victim's identification testimony, without regard to any notations or masking. The Third Circuit affirmed the conviction, holding that admission of the photographs, masked as they were, coupled with cautionary instructions, did not constitute error rising to constitutional dimensions.
In the instant case, the Illinois State Penitentiary "mugshot" was introduced because the trial judge found it relevant to the identification testimony of the victims. While the jury was not given cautionary instructions as to the purposes for which it could use the photograph, the admission of the "mugshot" was not so clearly prejudicial as to deny petitioner due process of law. On this trial record, any association the jury might have made between the photograph and petitioner's prior crime would have been purely speculative. This point is ruled against petitioner.

Photographic Evidence
There is some confusion regarding the photographic evidence introduced in this case. Altogether, three photographs of petitioner were marked as evidence at his trial. State's Exhibit No. 11/Defendant's Exhibit C was the July 18, 1967 *1230 "mugshot" taken by the St. Louis Police immediately after Parker's arrest. State's Exhibit No. 12 was the Illinois State Penitentiary "mugshot" dated 12-6-66. State's Exhibit No. 13 was apparently an ordinary photograph of petitioner.
It is not clear from the testimony at trial which photograph the detectives showed to the two victims on July 18. The opinion of the Missouri Supreme Court on petitioner's appeal indicated that it was State's Exhibit No. 11/Defendant's Exhibit C, the July 18 "mugshot" taken by the St. Louis Police immediately after petitioner's arrest. (State v. Parker, 458 S.W.2d 241, 242.) McQuade testified that State's Exhibit No. 13 was the photograph shown to him on July 18. Petitioner contends that the photograph shown to the victims on July 18 was actually one stolen from his locker at Dismas House by the police prior to his arrest. However, petitioner did not present evidence of this contention at trial, contending that he would have had to take the stand to do so, opening the opportunity for the prosecution to inquire of his prior conviction. He now petitions this court to hold a hearing on the point.
Petitioner's decision not to testify was a matter of trial strategy. The fact that his testimony would be subject to attack through use of his prior conviction was simply a factor to be considered in arriving at a decision whether to take the stand. Pope v. Swenson, 395 F.2d 321 (8th Cir. 1968); Hill v. Nelson, 423 F.2d 167 (9th Cir. 1970); Wright v. Craven, 412 F.2d 915 (9th Cir. 1969); Cowens v. Wainwright, 373 F.2d 34 (5th Cir.), cert. denied, 387 U.S. 913 (1967); Williams v. Beto, 354 F.2d 698 (5th Cir. 1965); Tompa v. Commonwealth of Virginia ex rel. Cunningham, 331 F.2d 552 (4th Cir. 1964).

In-Court Identifications
Petitioner maintains that the victims' in-court identifications were "tainted" by the police's suggestive use of his photographs and the improper use of his arraignment as a lineup. Unquestionably, it is improper for police to conduct lineups for identification purposes without the presence of defense counsel, and that evidence of identifications made at such improper lineups is inadmissible at trial. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The United States Supreme Court has been unwilling to prohibit the use of photographs for identification purposes, but has noted that the use of a single photograph may sometimes be so suggestive as to give rise to a substantial possibility of misidentification. In such a case, the identification will be treated in the same fashion as an improper lineup. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Where, however, a witness has an independent recollection of the accused arising from events other than the improper confrontation, an in-court identification may be permitted. In Simmons v. United States, supra, the court refused to hold that an in-court identification was necessarily tainted by improper pretrial use of photographs, stating (390 U.S. 377, 384, 88 S.Ct. 967, 971):
"Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identifications at trial * * * will be set aside on that ground only if the * * procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irrepairable misidentification."
In determining whether there are reliable indications that a witness in fact has an independent recollection of the accused and is not basing his present recollection on what he saw at an improper lineup, courts have considered the following:
(1) the length of time and the conditions under which a witness was able to observe the perpetrator during the commission of the crime: United States v. Terry, 137 U.S.App.D.C. 267, 422 F.2d *1231 704 (1970); Gregory v. United States, 133 U.S.App.D.C. 317, 410 F.2d 1016 (1969); Long v. United States, 137 U.S.App.D.C. 311, 424 F.2d 799 (1969); United States v. McNamara, 422 F.2d 499 (1st Cir.), cert. denied, 397 U.S. 1056, 90 S.Ct. 1403, 25 L.Ed.2d 674 (1970); United States v. Mooney, 417 F.2d 936 (8th Cir. 1969), cert. denied, 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541, rehearing denied, 397 U.S. 1071, 90 S.Ct. 1507, 25 L.Ed.2d 696 (1970);
(2) the similarity of the description given by a witness immediately after the crime to the physical characteristics of the individual he subsequently identifies: United States v. Terry, supra; Gregory v. United States, supra; Hawkins v. United States, 137 U.S.App.D.C. 103, 420 F.2d 1306 (1969); United States v. Hamilton, 137 U.S.App.D.C. 89, 420 F.2d 1292 (1969); United States v. Peacock, 400 F.2d 992 (6th Cir. 1968), cert. denied, Freeman v. United States, 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 569 and Peacock v. United States, 393 U.S. 1040, 89 S.Ct. 665, 21 L.Ed.2d 588 (1969);
(3) conduct on the part of police tending to focus attention on a particular suspect: United States v. Williams, supra; United States v. Cunningham, 423 F.2d 1269 (4th Cir. 1970); United States v. Davis, 407 F.2d 846 (4th Cir. 1969); United States v. Conway, 415 F.2d 158 (3d Cir. 1969), cert. denied, 397 U.S. 994, 90 S.Ct. 1131, 25 L.Ed.2d 401 (1970);
(4) presence of other witnesses at the time of the improper identification and the possible prejudicial influence of one witness' opinion on another's recollection: Gregory v. United States, supra; Clemons v. United States, 133 U.S.App. D.C. 27, 408 F.2d 1230 (1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L. Ed.2d 567 (1969); United States v. Collins, 416 F.2d 696 (4th Cir. 1969), cert. denied, 396 U.S. 1025, 90 S.Ct. 601, 24 L.Ed.2d 519 (1970).
Applying these criteria, the facts of this case reveal the following:
Conditions under which the victims viewed the assailant. In this case the bank parking lot was well-lighted by fluorescent lights. Miss Brockelman testified that the assailant did not attempt to hide his face, and both witnesses had over 1½ hours to view him.
Similarity between original description and Parker's appearance. Miss Brockelman testified at trial that she had no recollection of scars on the face of the assailant as he appeared on July 11, 1967, nor of tatoos on his arms. On the night of the incident, she told the St. Charles Police that the assailant's eyes were blue and his hair dark black. At trial, she admitted to being able to see red scars over petitioner's eyes while he was standing approximately eight feet from her in the courtroom. She noted then that petitioner had hazel eyes. She stated that she could see a tatoo on petitioner's shoulder as he stood fifteen feet from her at trial and also testified that petitioner's hair was dark brown.
On the night of the incident, witness McQuade was unable to tell police whether the assailant had large or small ears, bushy or thin eyebrows.
It is apparent that the descriptions originally given police by these witnesses did not coincide with some of petitioner's more outstanding physical characteristics. But the discrepancies do not involve permanent physical traits save the color of eyes and hair and the existence of scars over Parker's eyes. As to these, petitioner's hair is dark, whether brown or black. It should be remembered that the assailant was viewed under fluorescent lighting. Both Officers Allers and Lepping testified that they noticed no scars on petitioner's face when they arrested him on July 18. Although they were able to see marks on the July 18 "mugshot", both officers also stated they were more visible on petitioner's face at trial than they were on the photograph. All of the other discrepancies brought out at trial had to do with inconsistencies in the victims' statements regarding the photograph they were shown on July 18. *1232 In this connection, the victims were shown many photographs at that time. At most, it went to the weight of the testimony.
Police Conduct. Before witnesses Brockelman and McQuade viewed petitioner at the arraignment on July 21, the two detectives accompanying them told them that the man they were about to view was under arrest for suspicion of having committed the crime. There is evidence that the police showed the July 18 "mugshot" to both of them before and after leaving the courtroom.
Independence of the witnesses' identifications. Witnesses Brockelman and McQuade were together when they identified petitioner at the arraignment, but identified petitioner's photograph separately on July 18.
On the entire record, this court concludes that the July 18 display of petitioner's photograph to the victims and the use of petitioner's arraignment for identification purposes did not so taint the victims' memories as to raise a very substantial likelihood of misidentification. Simmons v. United States, supra. The witnesses had ample opportunity to view their assailant on the night of the incident and identified petitioner's photograph independently of one another on July 18. The court concludes that inconsistencies in testimony were matters for the jury. Gregory v. United States, supra; United States v. Peacock, supra; Lewis v. United States, 135 U.S.App.D.C. 187, 417 F.2d 755 (1969), cert. denied, 397 U.S. 1058, 90 S.Ct. 1404, 25 L.Ed.2d 676 (1970); United States v. Rizzo, 418 F.2d 71 (7th Cir. 1969); United States v. Frazier, 417 F.2d 1138 (4th Cir.), cert. denied 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427, rehearing denied, 398 U.S. 945, 90 S.Ct. 1850, 26 L.Ed.2d 284 (1970); United States v. Baker, 419 F.2d 83 (2d Cir. 1969), cert. denied, DeNorscio v. United States, 397 U.S. 971, 90 S.Ct. 1086, 25 L.Ed.2d 265, and 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970); United States v. Black, 412 F.2d 687 (6th Cir. 1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970).

Admission of the Pipe Holder
Under Missouri law, a police officer may make an arrest without a warrant if he has probable cause for the belief that the person arrested has committed a felony. State v. Johnson, 463 S.W.2d 785 (Mo.1971); State v. Davis, 462 S.W.2d 798 (Mo.1971); State v. Hammonds, 459 S.W.2d 365 (Mo.1970); State v. Parker, 458 S.W.2d 241 (Mo. 1970). The United States Court of Appeals for the Eighth Circuit has reviewed this practice and found it constitutionally permissible. United States v. Bonds, 422 F.2d 660 (8th Cir. 1970); Nash v. United States, 405 F.2d 1047 (8th Cir. 1969); Mueller v. Powell, 203 F.2d 797 (8th Cir. 1953). "Probable cause" exists where an arresting officer possesses personal knowledge or has received reasonably trustworthy information sufficient to lead a man of reasonable caution to believe that an offense has been committed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Bonds, supra; United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970); State v. Johnson, supra. In this case, the two victims of the assault had independently identified petitioner as their abductor. The court finds that the arrest was made upon probable cause.
When police have made a lawful arrest, they may contemporaneously search the arrestee's person and the area surrounding him from which he could obtain a weapon or obtain and destroy material that could be used as evidence against him. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, (1971); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, rehearing denied, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969).
It may be that under this rationale, police had no authority to search petitioner's locker when they first arrested him. However, when petitioner was given permission to collect his personal effects, then opened the door and removed the paper bag, the contents of that *1233 bag clearly came within the area subject to his control. There arose a substantial possibility that in picking up the bag, petitioner was in the process of obtaining a weapon or acquiring destructible evidence.
There is no reason to conclude from the United States Supreme Court decisions cited above that the limits of the area into which the police may conduct a valid search without a warrant are to be fixed mechanically at the moment of arrest. The rule permitting search incident to arrest developed out of the necessity of protecting arresting officers from concealed weapons and the necessity of preserving destructible evidence. The scope of permissible search varies with the circumstances of each arrest. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). In this case, the area over which petitioner exercised control was extended after arrest solely because the officers consented to petitioner's expressed desire to collect his personal effects. Petitioner does not maintain that his opening the locker was not a purely voluntary act on his part. There is nothing to indicate that the police said or did anything to try affirmatively to extend the area they could legally search. The facts in this case are similar to those in United States v. Manarite, 314 F.Supp. 607 (S.D.N.Y. 1970) where introduction of evidence obtained from defendants' closets was challenged. Police had lawfully arrested the defendants in their apartment and had asked one of them if she wished to take a dress and raincoat with her to the station-house. When she answered affirmatively, one of the officers opened the doors to two closets, noticed the evidence in question and seized it. The court said (314 F.Supp. 607, 614):
"Although the closets were not clearly areas from which Mrs. Portela could have reached for a weapon or evidence, they would certainly have become such areas if the agents had allowed her to open the closets herself. In fact, had they allowed her to open the closets herself, they would have been perfectly justified in thoroughly searching the closets before she actually reached in for her dress or raincoat.
Thus, in order to protect themselves, the nurse and the other law enforcement officials from the serious danger of Mrs. Portela seizing a weapon from the closets, it was necessary and reasonable for the agents to open the closet doors and take out a dress and raincoat for Mrs. Portela."
See also United States ex rel. Falconer v. Pate, 319 F.Supp. 206 (N.D.Ill.1970).
This court finds that the search of the paper bag was proper as incident to a lawful arrest, and that the admission in evidence of the pipe holder found therein did not violate any of petitioner's rights.
It is therefore ordered that the petition for writ of habeas corpus will be and is hereby denied.